or 25-1139 Driscoll v. City and County of Denver. Council, please proceed. Thank you, Your Honors. Jonathan Helfgott on behalf of Plaintiff and Appellant Michael Driscoll. In proceedings below, the District Court failed to address two of the three events at which Plaintiff alleged his constitutional rights were violated by Denver police officers' excessive uses of force. Looking just at one of those events, the District Court granted summary judgment on narrow factual grounds without giving Plaintiff the benefit of the reasonable inferences to which he was entitled and, in fact, drawing inferences the other way in Appellee v. City and County of Denver's favor. Beginning with the event that the District Court did address, which the parties have referred to as the 13th in Cherokee event, describing events that took place on May 31, 2020 outside of Denver police headquarters. Let me back you up a little bit. I mean, the District Court apparently thought he disposed of those events and, you know, for whatever reason, there had been litigation about individual defendants at those locations, right? Yes, there was quite a bit of prior procedure. Right. And so those events were resolved vis-a-vis the individuals and the District Court went ahead and just made a decision. And I'm just looking at your opening brief and we have, you know, in essence about a page of argument, but you don't seem to develop any real other than saying, look, the District Court should have addressed these things and didn't. I don't see much about, you know, why you were right. You think you had a burden to do that or do you just need to say, hey, we had these other claims. District Court didn't address them. I mean, because he did address them. He ruled against you. He just didn't have any real analysis to go with it. Right. Well, he ruled against plaintiff on causation grounds. And as to those events, causation was not an issue. Now, had there been and well, a judgment was entered on the whole case. Correct. But without addressing these events, but I would further direct the courts to Denver's summary judgment motion. Denver did not seek summary judgment as to those events either. In its summary judgment motion, Denver incorrectly asserted that the plaintiff's only claim against the city of Denver was for failure to train. The District Court flatly disagreed with Denver in its order and note 17 of its summary judgment order, acknowledging that all of plaintiff's claims were asserted against the city and county of Denver, including the claims based on what we have called the 13th and Lincoln event and the Colfax and Clarkson event. OK. Now, addressing the 13th and Cherokee event, and I'm happy to continue with those events. No, go ahead. Well, if we agree with you that those weren't addressed properly, don't we have to remand? I mean, there's just not enough here for us to nor should we be making the decision in the first instance. Well, plaintiff certainly agrees with that position, but to the extent Denver were to argue for some sort of limited remand, I do think we should address the 13th and Cherokee event as well, because we would strenuously disagree with that position. Well, so so as to I know we're going to move to the Cherokee, but as to the as to the district courts, the allegation of error, the district court didn't address the Lincoln and Clarkson events. Can you help me understand what the the legal issue is here? Because saying that the district court didn't look at some allegations at summary judgment doesn't really resonate as the operative error. It has to be that the district court ignored some body of evidence that you contend created a genuine issue, a jury issue on your claims as to these events. Is that right? Absolutely, Judge Rossman, and as to each event, plaintiff's claim based on Monell is that Denver official policies created an environment where Denver police officers felt free to use and did use excessive force with impunity. So where is that in your opening brief on this on that issue? In our opening brief, we describe the use of force policy in the body worn camera activation policy at length and point to the unrebutted testimony presented at summary judgment of plaintiff's expert, Professor Edward McGuire, testimony that the District of Colorado in another case versus the city and county of Denver found was sufficient to survive summary judgment, pointing specifically at these same two policies. Those policies all your I'll remind your honors were with respect to uses of force reports. Denver did not require the completion of use of force reports close in time to the events they described for protests. That was a wholesale matter of affirmative policy in the city of Canada and county of Denver. Nor did Denver require activation of officers body worn cameras during protests and for Denver SWAT officers, many of whose actions are at issue in the events that led to the violation of plaintiff's constitutional rights. In a case of doublespeak or call it a catch 22, Denver's written policy was that SWAT officers did not need to activate their body worn cameras during so-called tactical deployments. But there's testimony in the record from multiple such officers that any time Denver SWAT was deployed, that was considered a tactical deployment. What was your go ahead and what was your expert report in advance offered to advance? What was the expert evidence for? To advance the causal link between those affirmative written policies and the constitutional violations at issue. And the district court never reached the substance of Denver's motion to exclude because it thought it was moot at that point, right? Okay, so that would be appropriate to consider. Correct. And my question was what you were just saying about that various evidence and your position on that. That was common to all three locations. Correct. Okay. And the district court, I mean, it was expounded on by the district court as to the 13th and Cherokee location. Okay. It just simply was not at issue in the summary judgment record because Denver misidentified plaintiff's claims and incorrectly assumed that the claims based against the asserted against the individual officers had nothing to do with the city and county of Denver. An assertion the district court disagreed with and an assertion that was flatly wrong. Okay, thanks. Turning to the 13th and Cherokee event. Based on the evidence presented in proceedings below, a reasonable jury could conclude first that the officers located in the parking lot diagonally across from protesters were Denver SWAT officers. And second, that one of those officers fired the less lethal munition that caused plaintiffs severe and life-changing injuries. The first conclusion is simple and amply supported by evidence that presented below. Denver denied its officers were present at the event at all, but the evidence shows otherwise. A use of force report prepared by Denver SWAT officer Craig Moen put his Denver SWAT team, Metro 3, at the 13th and Cherokee event. From the video of the event, and this isn't conventionally submitted Exhibit 191, there are two groups of officers seen participating in the ultimate altercation with protesters. One group from a skirmish line across the road about a third of a block in front of the protesters and another group in the parking lot diagonally across the street. Aside from a single Denver police officer, Sergeant Stack, that skirmish line was entirely and consisted entirely of officers from Jefferson County or Jeffco. Now, your honors, if both Denver SWAT and Jeffco officers were present at the event and the skirmish line were Jeffco officers, the only place the Denver SWAT officers could have been was in that parking lot. So let's assume for argument's sake that we spot you that the summary judgment evidence shows a jury question on the Denver officers were on the scene and fired, and then that leaves us still with the question of whether the summary is what actually injured your client. And on that point, I'd like you to describe what you understand to be the applicable legal standard and then tell me how you satisfy it. Well, to my mind, the applicable legal standard is whether a reasonable jury viewing the evidence that the district court reviewed and the plaintiff presented could draw the reasonable inference that that was the case, that plaintiff was struck by ammunition fired by one of them. What is the doctrine? What guides the inquiry on causation? Don't we have case law that describes how you satisfy, how we assess the facts according to the legal standard? Well, according to Valdez and McDonald and Burke v. The City of Oklahoma City, and Valdez, the court reasoned that the burden was to bring causation above a speculative level. Burke went even farther. Burke pointed to allegations, mere allegations, that the injury in question, the injury alleged, was caused by the identified officer. Haven't we held, haven't we held that only, if it's 50-50, if it's in equipose, then that's not enough. Is that your understanding of the legal standard? That's correct. Okay, and so, and so you're, go ahead. Our position is that this is far from a 50-50 proposition, and this was made clear by causation arguments the plaintiff raised in summary judgment briefing and that the district court ignored. But could a reasonable jury find that that Jeffco fired the shot that hit your client? I don't believe so, your honor. Well, why not? Well, Denver, in its answering brief, pointed to evidence of muzzle flashes from the Jeffco skirmish line. Those happened at minute 1013 in exhibit 191. But you, to accept your position, we have to assume that the officers on the roof were all Denver officers, right? Well, assume or, or agree with plaintiff's position that, that the evidence permits that reasonable inference. Well, how do, I mean, I look at that video and you have, first of all, I'm not sure we get to look at exhibit 213. I mean, it wasn't submitted until the motion to alter or amend judgment. So, you've got one truck goes in, which everyone says is a Jeffco truck. And then behind it is another truck that without 213, I don't think you can tell whose truck it is. And then you have not a continuous feed, a video, and you have some officers going down an alley, some officers walking towards the skirmish line, and some officers disappear inside, it looks like a building. And then some officers appear later on the roof. How do we know if those are Jeffco, how do we know who those people are on the roof? Well, your honor, I don't think Denver pointed to any evidence that would be sufficient to meet the summary judgment standard that only that any Jefferson County officer went up to the parking lot. Conversely, plaintiff never disputed. Well, what Denver said and what plaintiff has not disputed is that only Jefferson County officers were on the skirmish. So at a minimum, it is reasonable to infer. Well, likely wouldn't just because Jeffco officers are on the skirmish skirmish line doesn't mean that all Jeffco officers were on the skirmish line. That's true, your honor. But it does mean that the Denver officers who were there had to be somewhere else. And the only other group of Denver officers were there. And the only way you get there is if we look at Exhibit 213 and decide that the trucks look similar. Well, I would disagree with you respectfully, your honor. Officer Moen's report said that his SWAT team was there. He said that it was at police headquarters on the night of May 31st, 2020, and described an altercation that is entirely consistent with the video evidence of the altercation at which plaintiff was injured. Your honor, I would like to reserve some time for rebuttal. Okay. Judge Rushman, do you have anything else? No, thank you. Judge McHugh, go ahead. We'll reserve the rest. I'm Brice Velares for Denver. The court should affirm for three reasons. First, there's no evidence Denver's policies on body-worn cameras or use of force reports contributed to Mr. Driscoll's injuries in any way, let alone proximately cause them. Second, there's no evidence those policies were enacted with deliberate indifference, which was required for all Moen claims that involve policies that are lawful on their face. And finally, third, with respect to the 13th and Cherokee incident event, Mr. Driscoll failed to put forth material facts that connect a Denver officer to his injury. Well, he had Officer Moen at the scene. I don't think he did. I know he did not. Moen's report says he went to headquarters that evening, that night. He doesn't have a specific location and he doesn't have a specific time. He could have been anywhere around the area. I mean, Kent, isn't he entitled to an inference that if Moen was there with his team and it was describing an incident that that was the incident? No, he's entitled to reasonable inferences. For example, in Exhibit 192, after Mr. Driscoll's injury, the Denver officers joined Jeffco's skirmish line and continue to move out and disperse the protesters and fire munitions at the protesters to disperse them. Who's to say Moen was in that group? There's nothing that places Moen in that parking lot. And to Judge McHugh's early point, we don't even get to assume Denver is in that parking lot without Exhibit 213. And even if we consider that and the Denver Bearcat did drive up shortly before the injury, who's to say that those officers are in the parking parking lot? We don't know. There's too many unknowns. Jumping back to Denver's... I mean, how is he ever supposed to prove a claim? You have two sets of officers out there firing into the crowd. The evidence is very difficult to muster. I mean, nobody can tell whose munitions are hitting who. He knows they were both firing. We have evidence that both Jeffco and Moen were firing, at least at some point. I mean, how is he ever supposed to prove his case under your theory? Well, it's not my theory. It's this court's theory. Under Valdez... We don't have theories. Under this court's law. Under this court's law, under Valdez, that's exactly what happened. Two different officers fired. We didn't know which bullet, which officer struck the individual. And that's why they lost. To come up with an analogy in which he could potentially defeat summary judgment, let's say that it was Denver in the skirmish line, not Jeffco. Denver in the parking lot. Then sure, I would get up here and argue that no, that's not enough. Maybe it's a protester, something like that. But if that situation happened, potentially that could defeat summary judgment. It seemed to me that everybody agreed that he was hit with ammunition. Was there any evidence? I mean, there was also evidence, though, that rocks and bottles and different things were flying around. Is there evidence in the record as to what he was hit with? There is no evidence. We don't know. And we do not agree it was hit with ammunition. We argued in our summary judgment motion. It could have been a rock from the protesters, which Jeffco's sergeant in the skirmish line testified at deposition that protesters were throwing rocks. And that's why they deployed munitions to disperse the crowd. His best evidence seems to be the report from Officer Mullen. I mean, isn't it true that that puts the Denver Police Department at the scene? You focus on that he fired a round at someone who was throwing objects at the police, but he says he fired at least one direct impact round. It could have been one of the other ones he fired that hit the plaintiff. No, two parts. First, no, as argued earlier, it does not put Mullen at the scene. He could have been at another event. He could have followed up later. Well, he says he's at headquarters, right? That's what we're talking about. The administrative building, right? Headquarters.  And it's in the evening. Correct. And he's dealing with a large crowd of protesters. I mean, isn't there a reasonable inference that he's talking about this group? No, to have it reasonable, we need a specific location and time. The protests were huge. Where do you get that? That you have to have a specific location and time to have a reasonable inference. What? That. I would guess coming back to the speculation case. You wouldn't need an inference if you had a specific location and time, right? Well, I would say if he had a specific time and location, then maybe we could talk about is it in the parking lot incident, or is it later on when the Denver officers joined and advanced the crowd further down the road, something like that. We're just saying, hey, I was at headquarters this evening, and it must have been this event. That's speculative. What does the record show as to what else? I gleaned from the briefing that there were other things going on around headquarters. It wasn't just at this particular incident that there were things going on at headquarters that night, is it? But I don't think it was very definitive. Can you expound on that? Yeah, absolutely. And as a prelude to this, to prevail, plaintiff needs to prove that Denver's policies on body-worn camera and use of force reports were the proximate cause for his injuries. So let's say for the sake of argument, a Denver officer, or he was injured by a Denver officer. Fine, that does not mean plaintiff prevails. He needs to connect it to Denver's policies and show that they were enacted with deliberate indifference. But the district court ruled on a different ground. The district court ruled that he couldn't even show that a Denver officer was present at the scene or fired the round that hit him, right? Correct, but under Walton- The basis for the district court decision. Correct, but under Walton, the court can affirm on alternate grounds when the grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal. The grounds are adequate because there is no nexus between Denver's policies and Mr. Driscoll's alleged injury. They were apparent in the record because the parties fully briefed the issue below. It's perfectly teed up for the court and counsel has illuminated it in the briefs and here at oral argument. If the court does decide to remand, whoever loses, whichever side loses is going to appeal and we'll find ourselves right back here two years later. How about the use of force policy? There's a nexus there, isn't it? If we assume that it was a Denver officer that shot the munition and hit the plaintiff, then don't we have, pursuant to the use of force policy, don't we have a connection to the policy? No, Denver's use of force policy was that anytime an officer used force, that officer was required to detail that force in a report saying what force was used, why, the circumstances behind it. And looking at Mr. Driscoll's encounters with police, show that policy has nothing to do with the officer's decision to deploy force. For example, at Colfax and Lincoln, officers just deployed tear gas after protesters were throwing water bottles at them, launching fireworks, and the canister that landed near Mr. Driscoll was launched only after someone standing next to Mr. Driscoll bent down, picked up an object and threw it at the police officer. That's what caused the officer to deploy force or tear gas, not anything with Denver's policies. The same is true at Colfax and Clarkson, which didn't even involve Denver's officers. That was Brighton and Commerce City officers who were under their own policies. Why aren't these arguments most appropriately made to the district court in the first instance? They were made to the district court and that's why it's apparent in the record. It's perfectly teed up for this court. The arguments are there and... The arguments are there, but the district court just ignored them for a reason we don't know. So...  It seems the district court apparently may have forgotten to complete the analysis, but this court can... Turning back to the Cherokee incident, one of the arguments that Mr. Driscoll makes is that you can tell the shot that hit him came from the roof because of how he's holding his plywood sign that he's protected. And if you look very slowly and carefully at each of the frames, it is clear that he keeps it in front of him so that he would be protected from shots from the skirmish line. And their argument is the area where he was vulnerable was coming in to the side and down, which would be from the roof. Is that enough for a reasonable inference? At least not who shot, but that it came from the roof? No, there's several reasons there. I also have looked very closely at the frames and it seems that his head appears above and below it at multiple times. So it could have been coming from the skirmish line. Again, we have the video evidence from the helicopter night vision that shows the munitions coming. Mr. Driscoll's argument that it happened later is not persuasive because later the crowd had already been dispersed. Secondly, that is very technical argument or analysis that would require something like an expert. Would the trajectory depend on the type of munition? Was it a 40 millimeter foam round? Is it a beanbag? We have no idea. So to say that it was fired from, I don't know, maybe a hundred yards away and we don't know what, and based on the way his head moved, it had to come from the parking lot. That is not persuasive. Well, it doesn't have to be ultimately persuasive. It just has to be a reasonable influence, right? I should have used my, changed the other word. That is not reasonable. And jumping back to Colfax and Washington, which did involve Denver officers there. Oh, and again, I didn't mention that Colfax and Clarkson, the officers were saying, rock incoming, rock, rock, rock. And then they deployed pepper ball munitions. Again, those are Brighton and Commerce City. At Colfax and Washington, Denver officers, they deployed force at Mr. Driscoll's plywood sign that's caught on body-worn camera. You hear him say, that guy behind the plywood sign, Mr. Driscoll, he's kicking shit back at us. He's kicking shit back at us. Then they deploy force. Mr. Driscoll kicking things is what made the officers use force, not Denver's policies. And as noted, he needs to prove deliberate indifference. The policies were enacted with deliberate indifference. He points to a Waller to say otherwise, that it only applies to failure to train and supervise. But in Waller, they say it applies at least to failure to train and supervise. Later in Finch v. Rapp, this court applied deliberate indifference to policies on discipline. And again, in Lucas v. Turner Key Health Clinics, the court applied deliberate indifference to all Monell claims. And that was for medical cost savings. Just last year, in Griffith v. El Paso County, the court applied deliberate indifference to policies on gender classification. And that's also consistent with the U.S. Supreme Court framework in City of Oklahoma City v. Tuttle and Board of County Commissioners v. Brown, where they noted that the only reason deliberate indifference wasn't in Monell, the initial case, is because it was unconstitutional on its face. It then later applied deliberate indifference to all claims in Gesper v. Lago Vista. And that's consistent with this Second Circuit, the D.C. Circuit, and the Seventh Circuit, which analyzed the issue and all come out that way. Every single other circuit has a case law, overwhelming case law, that says deliberate indifference applies to all claims, really in theory. They're only, I mean, technically, it isn't analyzed for facially unconstitutional policies because if a policy is unconstitutional on its face, then obviously it is enacted with deliberate indifference. So yes, he needs to prove deliberate indifference, and he has not. Oh, no, I want to rebut a few things that were made earlier about nothing in the record for no body-worn cameras at the protests. That's inaccurate. Denver's policy was that officers needed to wear the cameras for the duration of their shifts and record them for all interactions with pedestrians, with a particular emphasis to record it if the encounter could become adversarial or was adversarial. The citation that it's not required for protesters or for officers, it comes from a SWAT sergeant technician who said it isn't required for SWAT. He doesn't say for officers. And again, that's just an opinion of a low-level employee, kind of boxed in in a deposition. There's nothing coming from a final policymaker or higher-ups in Denver that say officers did not need to use body-worn camera. So you're saying that the officer's testimony, that the SWAT was not required to use their body-worn testimony is actually contradicts the official policy. It does contradict the official policy, and there's also loads of body-worn camera footage in this case. Okay. Thank you, counsel. Judge McHugh, do you have anything else? Judge Rossman? Okay. Good. Thank you, guys. Briefly addressing the last thing that my colleague from the city of Denver just said. The body-worn camera activation policy for SWAT was a matter of official written policy, and we cite in our opening brief to the page and paragraph. I don't have the page at my fingertips, but it was paragraph 10B. Say it again? It was a paragraph 10B, but I couldn't tell you off the top of my head. I forgot that section. Okay. I do want to call your honor's attention to the fact that, you know, the argument about not linking the events that the district court did not address to official policy were not teed up in summary judgment proceedings below. This is a new argument raised on appeal because Denver misidentified plaintiff's claims. Denver believed, and to the extent arguments were made at all, they were only made with respect to a failure to train theory. I'd like to talk about two other things. First, the inferences that Denver is urging your honors to make in its favor beyond those already made by the district court to conclude that Officer Mowen could have been somewhere else. Denver had access to all of the raw halo footage Denver produced in its Exhibit OO, which I misidentified in our reply brief, and I apologize, it's Exhibit W. Halo footage from each of the four corners surrounding Denver Police Headquarters for an hour before to an hour after the event. There is absolutely no indication in that evidence that any other altercation happened consistent with the events described by Officer Mowen. Moreover, Officer Mowen put those events after the curfew order, that was at 8 p.m. He did other things after the curfew order that only began after several announcements. His description is perfectly consistent with events that happened at 10, 10 p.m. And finally, on the question of causation, if you'll permit me just a moment more.  Just wanna issue one clarification that it's plaintiff's position that he could have been struck from someone in the parking lot or atop the structure. There were three officers in each location by the time he was struck. But your honors, and it's difficult to see and it's directly contrary to one of the conclusions the District Court drew, but two seconds before it is clear that the plaintiff has been injured in Exhibit 191, in a narrow gap where an officer is walking from right to left across the frame between the street sign that says 13th Avenue and the street pole holding it up, you can see two muzzle flashes from the direction of the parking lot. And two seconds later, plaintiff is seen bending over, crying in pain. Can we identify the officer from that footage? You can't. Okay. We have to rely on the reasonable inference. So we have to infer that it was not a Jeffco officer and that it was those shots that hit him. Correct, your honor. And in light of these inconsistent policies on body-worn camera activation, the best we can do is the best we can do from the video evidence we have. Frankly, I think it's a miracle that it's as strong as it is, that those officers weren't activating their body-worn cameras, but we believe it is more than sufficient. Thank you, counsel. Your case will be submitted and counsel are excused.